UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VERA SCHMIDLIN,

          Plaintiff,

                                  Case No. 13-cv-10552
                                  Honorable Gershwin A. Drain

v.

UNCLE ED'S OIL SHOPPES, INC.,

          Defendant.

_____/

## OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS *IN LIMINE* MOTIONS TO EXCLUVDE IRRELEVANT EVIDENCE [#31] AND HEARSAY STATEMENTS [#32]

### I. INTRODUCTION

      Plaintiff, Vera Schmidlin, filed this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et. seq.*, against Defendant Uncle Ed's Oil Shoppes, Inc. ("Uncle Ed's") alleging (1) a hostile work environment as a result of sexual harassment during her employment, and (2) unlawful retaliation. On July 22, 2014, this Court granted Defendant's summary judgment motion in part with respect to Plaintiff's claim for unlawful retaliation on behalf of the Defendant [#25]. Accordingly, Plaintiff's hostile work environment is the sole remaining claim in this action.

      Presently before the Court are two motions: (1) Defendant's *In Limine* Motion to Exclude Irrelevant Evidence [#31], and (2) Defendant's *In Limine* Motion to Exclude Hearsay Statements [#32]. This matter is fully briefed and a hearing will be held on November 3, 2014. For the reasons discussed herein, the Court should DENY in part and GRANT in Part Defendants *In Limine* Motions to Exclude Irrelevant Evidence and Exclude Hearsay Statements.

-1-

## II. FACTUAL BACKGROUND

The pertinent facts to these motions involve proposed testimony for trial stemming from depositions in this case. During their depositions, two witnesses—Morrease Germany and Gjon Micakaj—testified about sexual conduct and comments allegedly made by employees of Defendant regarding Plaintiff.

Mr. Germany—a former Assistant Manager of Defendant—testified that Steve Smith—a former Store Manger of Defendant—told Mr. Germany that he wanted to have sexual intercourse with Plaintiff. Mr. Germany also testified that, when Plaintiff was not looking, Mr. Smith would make sexual gestures towards Plaintiff without Plaintiff's knowledge. Further, Mr. Germany testified that certain lower bay technicians would joke about their desire to have sexual intercourse with Plaintiff without her knowledge. Gjon Micakaj—the cousin of Plaintiff and a former Assistant Manager for Defendant—also testified that he heard technicians making sexual comments about Plaintiff.

During Plaintiff's deposition, Plaintiff testified that two former employees of Defendant—Cassandra Bednarski and Jen Smith—told Plaintiff they had been harassed at work, but never complained because they did not want to lose their jobs. Plaintiff also testified that Jen Smith told her that Defendant would never terminate Dean Falloni—a co-worker of Plaintiff, whom Plaintiff alleges engaged in inappropriate sexual conduct toward her—because Mr. Falloni was too good at his job working on cars. Lastly, Plaintiff testified that Morrease Germany informed her that Steve Smith was making sexual comments about Plaintiff without Plaintiff's knowledge.

### III. LEGAL ANALYSIS

### A. Relevancy

Rule 401 of the Federal Rules of Evidence states that evidence is relevant if it "has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence," however, "is not admissible." Fed. R. Evid. 402. Even if evidence is relevant, it may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

To establish her hostile work environment claim under Title VII, Plaintiff must prove: (1) she is a members of a protected class; (2) she was subjected to unwelcome harassment; (3) her harassment was based on her protected status; (4) her harassment was sufficiently severe or pervasive to affect a term, condition, or privilege of her employment; and (5) her employer knew or should have known about the harassing conduct but failed to take corrective or preventative actions. *See Arnold v. City of Columbus*, 515 F. App'x 524, 535 (6th Cir. 2013); Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Defendant's motions *in limine* dispute the relevancy of potential testimony that can be used to demonstrate the fourth and fifth prongs of Plaintiff's prima facie case.

In assessing the fourth prong of Plaintiff's prima facie case for a hostile work environment under Title VII, the Sixth Circuit has stated that "comments or conduct of which a plaintiff had no knowledge cannot be said to have made her work environment hostile[.]" *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009). Specifically, the Sixth Circuit has held that the precedent of the court "makes clear that the factfinder may consider similar acts of harassment ***of which a plaintiff becomes aware during the course of his or her employment***, even if the harassing acts were directed at others or occurred outside of the plaintiff's presence."

*Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 336 (6th Cir. 2008) (emphasis added); *see also Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 249 n.4 (6th Cir. 1998) (finding that a plaintiff's testimony by three other employees regarding discriminatory behavior by the President of the Defendant, outside of plaintiff's presence, was "irrelevant at [summary judgment] to plaintiff's hostile environment and disparate treatment claims because there is no evidence that plaintiff was aware of these actions at the time.").

In *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714 (6th Cir. 2012), the Sixth Circuit analyzed its decision from *Jackson v. Quanex Corporation.,* 191 F.3d 647 (6th Cir. 1999), to clarify that plaintiffs must know about the harassment for which they are basing their hostile environment claim, and that they become aware of it during the period of their employment:

> Implicit in the consideration of the totality of the circumstances is that a plaintiff was aware of the harassment that was allegedly directed toward other employees. . . . [A] plaintiff does not need to be the target of, or a witness to harassment in order for us to consider that harassment in the totality of the circumstances; but he does need to know about it. . . . [T]he district court properly declined to aggregate all claims made by all Plaintiffs if they failed to show they were each aware of the harassment claimed by the others.

*Berryman,* 669 F.3d at 718 (analyzing *Jackson,* 191 F.3d at 661); *see also id.* at 719 (citing *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), to find that "Plaintiffs needed to marshal basic evidence to show that they were individually aware of the harassment experienced by other plaintiffs.")

The Sixth Circuit requires an employee to become aware of similar discriminatory conduct during the course of their employment in light of the Supreme Court's instruction "that claims based on a hostile work environment must be judged by both an objective and a subjective standard." *Armstrong v. Whirlpool Corp.*, 363 F. App'x 317, 328 (6th Cir. 2010) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993). According to the Sixth Circuit, the requirement that a Plaintiff be aware of

-4-

discriminatory behavior "is consistent with the underlying purposes of the hostile work environment inquiry." *Id.*

Consequently, in assessing the fourth prong for demonstrating a prima facie case of a hostile work environment under Title VII, only comments or conduct of which Plaintiff had knowledge during her employment will be deemed relevant to determine whether the harassment created a hostile work environment. *See*, *e.g.*, *Meadows v. Wahler Auto. Sys., Inc.*, No. 13-CV-11926, 2014 WL 4494361, at *12 (E.D. Mich. Sept. 12, 2014) (citing *Armstrong*, 363 F. App'x at 328, for the proposition that the plaintiff learning about discriminatory actions in the workplace during an investigation after she was employed was not enough "without actual evidence that she, in fact, heard or knew about" the discriminatory actions that were the basis of her hostile environment claim); *Worthington v. Brighton Ford, Inc.*, No. 13-CV-10249, 2014 WL 555186 (E.D. Mich. Feb. 12, 2014) (citing *Hawkins*, 517 F.3d at 336, for the proposition "that a factfinder may only consider similar acts of harassment if the 'plaintiff becomes aware [of it] during the course of his or her employment....' "); *Fall v. MNP Corp.*, No. 07-10480, 2008 WL 1882669, at *12 n.8 (E.D. Mich. Apr. 24, 2008) (permitting incidents of sexual harassment not directed at the plaintiff as evidence of a hostile environment, *but only after*, emphasizing that the "[p]laintiff testified that she became aware of [the comments] . . . while she was employed by Defendants.").

With respect to satisfying the fifth prong for demonstrating a hostile work environment, the Plaintiff need not know about the harassing activity if the proposed testimony will be relevant in proving whether the Defendant knew or should have known of the harassment and failed to implement prompt and appropriate corrective action. *See Hawkins v. Anheuser–Busch, Inc.,* 517 F.3d 321, 339 (6th Cir.2008) ("[A] company may be held liable for coworker

harassment if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.").

The Sixth Circuit has found that in order "[t]o establish that the employer 'knew or should have known' of the co-worker harassment, the plaintiff need not necessarily have reported it to a supervisor." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 276 (6th Cir. 2009) (quoting *Jackson,* 191 F.3d at 663). "Where harassment is pervasive, knowledge may be imputed to the employer." *Id.* (citing *Jackson,* 191 F.3d at 663). The Sixth Circuit states the proper standard for evaluating the fifth prong as follows:

> When an employer implements a remedy, it can be liable for sex discrimination in violation of Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination.

*West v. Tyson Foods, Inc.*, 374 F. App'x 624, 632 (6th Cir. 2010) (quoting *Blankenship v. Parke Care Ctrs., Inc.,* 123 F.3d 868, 873 (6th Cir. 1997)). Accordingly, evidence that an employer had actual or constructive notice of sexual harassment and exhibited indifference or unreasonableness to the situation is both probative and relevant in establishing the fifth prong of a prima facie case of a hostile work environment. *See Tyson Foods, Inc.*, 374 F. App'x at 634 (quoting *Sandoval v. American Bldg. Maintenance Industries, Inc.,* 578 F.3d 787, 802 (8th Cir. 2009), to find that "[i]n the context of sexual harassment claims, actual notice is established by proof that management knew of the harassment.); *see also Sandoval*, 578 F.3d at 802 (quoting *Kunin v. Sears Roebuck and Co.,* 175 F.3d 289, 294 (3d Cir. 1999), to explain that "there can be constructive notice in two situations: where an employee provides management level personnel with enough information to raise a probability of sexual harassment in the mind of a reasonable employer, or where the harassment is so pervasive and open that a reasonable employer would have had to be aware of it.") (citations omitted).

> **1. The Testimony of Mr. Morrease Germany is Relevant and Not Unduly Prejudicial**

Defendant argues that Morrease Germany should not be able to testify regarding (1) his observations of Steve Smith's alleged behavior towards Plaintiff behind her back and "around others," and (2) comments that Durrell Washington allegedly made to Mr. Germany about women in the workplace because Plaintiff was unaware of the statements during her employment. *See* Dkt. No. 40 at 2-3.  Further, Defendant argues that Mr. Germany's proposed testimony has no bearing on whether Defendant knew about the alleged harassment. *Id.* at 7. Lastly, Defendant argues that even if the evidence is relevant it should be precluded because it is unduly prejudicial. *Id.* at 9.  The Court will address these arguments in turn.

> **a. Plaintiff Was, In Fact, Aware of the Behavior Regarding Steve Smith**

Defendant argues that the potential testimony from Mr. Germany regarding the actions of Mr. Smith would be irrelevant because the purported gestures by Mr. Smith were made "behind Plaintiff when she was not looking." Dkt. No. 31 at 10.   According to the Defendant, "there is no indication from Plaintiff in her deposition that she was aware of any of the acts about which she now seeks to introduce evidence." Dkt. No. 40 at 7.

After reviewing the record, the Court disagrees.  As an initial matter, Defendant selectively relies on specific testimony from Mr. Germany, but turns a blind eye to Mr. Germany's subsequent testimony in which he undercuts the very assertion that Defendant advances regarding Plaintiff's knowledge of Mr. Smith's actions:

> Q. Was Vera ever able – let me ask you this. Did he do these gestures like behind her back and make sure she didn't see him doing the gestures, or were there times that she would be able to see these gestures he was making?
>
> A. Behind her back**. *She caught him maybe – she may have caught him a few times, and if she – I think she might have said something to me*.**  And if she said something to me, I told her to go to report it to Cassie, because I was the assistant manager and Cassie was the manager.

> Q. And you're saying to your recollection it is possible that she said something to you about what Steve was doing, is that your testimony?
>
> A. *Yes.  I just reported* – to clear up any involvement, I would say if you have any problems, then you report it to the manager and the district manager.

Dkt. No. 31 at 18. (Germany Dep. Trans. at 24:8-24) (emphases added). Mr. Germany's deposition testimony that Plaintiff "may have caught [Mr. Smith]" and could have reported what Mr. Smith was doing undercuts Defendant's assertion that Plaintiff had no idea Mr. Smith was making the gestures.

Defendant's argument is further undercut by Plaintiff's sworn affidavit from June 11, 2014, in which Plaintiff states that she recalled similar sexual comments and gestures on the part of Mr. Smith.  *See* Dkt. No. 38-4.  In the affidavit, Plaintiff indicates that she recalled Mr. Smith saying "it would fun [sic] to have sex with a girl like you." *Id.* at ¶ 1; *cf.* Dkt. No. 31 at 17-19 (Mr. Germany's testimony noting that Mr. Smith would mention to Mr. Germany that he would like to have sexual relations with Plaintiff "[a]t least three times a week" and that Mr. Smith discussed this often with others in the Shelby location).

Further, Plaintiff recalled similar incidents where she would see Mr. Smith making sexual gestures with his tongue and fingers indicating oral sex, and making sexual gestures towards a car imitating having sex with the car. Dkt. No. 38-4 at ¶ 3; *cf.* Dkt. No. 31 at 18 (Mr. Germany noting that Mr. Smith would make gestures such as: "[a] thrusting of the lower body," and him having her perform oral sex on him.  Also Mr. Germany noting that "if there was the occurrence where [Plaintiff and Mr. Smith] both worked together, then [Mr. Smith] would [make gestures] at least once a day," and that "[s]he caught him maybe[.]" ).

While Plaintiff's recollection may not match Mr. Germany's description perfectly—for example, Plaintiff doesn't state she remembers Mr. Smith telling Mr. Germany that Mr. Smith

-8-

wanted to have sex with her, and Plaintiff remembers Mr. Smith making gestures of oral sex on her, and not him—the Court finds that it has sufficient facts to find that Plaintiff became aware of similar acts of harassment during the course of her employment. *See Hawkins*, 517 F.3d at 336.

### b. Plaintiff Was, In Fact, Aware of the Comments Made by Durrell Washington

Defendant also seeks to preclude testimony from Mr. Germany regarding comments made by Durrell Washington. Again, the Defendants argue that, "there is no indication from Plaintiff in her deposition that she was aware of any of the acts about which she now seeks to introduce evidence." Dkt. No. 40 at 7.

With respect to the comments that Durrell Washington allegedly made to Mr. Germany, the Court, again disagrees with Defendant. Mr. Germany testified in his deposition that he remembers Mr. Washington saying something along the line that women were not fit to work on cars:

> Q. What did you hear Durrell say to Vera that was sexual?
>
> A. Well, he didn't – I would say he didn't say anything directly to her.
>
> Q. Okay.
>
> A. He said a general statement, which was I would consider a feminist statement
>
> Q. Okay
>
> A. Which I found it to be offensive.
>
> Q. Okay
>
> A. ***He said women should not be doing this job*** and should not be – they don't know enough to – something to the nature of they weren't – they was not either skilled or smart enough or – because they're too feminine to be working around cars and/or on cars.

Dkt. No 38-3 at 3-4 (Germany Dep. Trans. at 12:16-25—13:1-4) (emphasis added).  Similarly, Plaintiff testifies that while she was working she remembers that she had a problem with Durrell Washington making a statement that women were not fit to work on cars:

> And the problem that I had had was Durrell had come over, and I was working over a car and he had literally pushed me out the way where I almost slipped and fell into the pit. And I did fall, but I didn't fall into the pit, but I was very close to falling into the pit where that car was parked. ***And he had just made a comment, stated that women don't belong working on cars, get out the way and pushed me over like I wasn't even there, and I had fell. . . . I believe Morease saw it. Morease saw it.***

Dkt. No. 38-5 at 4 (Schmidlin Dep. Trans. at 55:8-19) (emphasis added); *see also id.* at 5 (Plaintiff outlining that she remembers Mr. Washington "telling me that I don't belong in here, women don't belong in here," and that she "did tell Cassie all of this[.]").  Given the deposition testimony of both Mr. Germany and Plaintiff, the Court finds that it has sufficient facts to find that Plaintiff became aware of similar acts of harassment during the course of her employment. *See Hawkins*, 517 F.3d at 336

### c. Mr. Germany's Testimony Has Bearing on Whether Defendant Had Notice of Alleged Harassing Conduct

Even if the Court were to find that Plaintiff did not become aware of these acts during her employment, the Court would still find that the testimony is relevant to establishing Plaintiff's fifth prong of her prima facie case, because it is probative regarding whether Defendant knew or should have known of harassment, yet failed to implement prompt and appropriate corrective action.

Defendant emphasizes that Mr. Germany is an Assistant Manager and that he does not have the power to hire, fire, promote, demote or discipline employees on his own. Dkt. No. 40 at 8.  As a result, Defendant argues that what "Mr. Germany saw or heard cannot be imputed to Uncle Ed's and cannot be said to have put Uncle Ed's on notice of anything." *Id.*

While Mr. Germany may not have been a manager at the time, Cassandra Bednarski was a manager for Defendant. This is important because, in his deposition, Mr. Germany testified that he did report complaints and problems about the work environment to Ms. Bednarski:

> Q. What if anything did you do as an assistant manager with regards to what Steve was saying about Vera and the gestures he was making towards Vera, what as an assistant manager did you do about that other than this conversation that you had with Steve where you told him it was inappropriate?
>
> **A.** When I talked – I talked to him about it. I talked to – I talked to Gjon about it. And I talked to – when ***I talked to Cassie,*** I didn't tell her specifically that it was Steve, ***I would just tell her to reiterate the sexual harassment, that it is possible that it could go on around the shop. So I was saying that I see it, and it should be talked about as a team, not directly as an individual.***

Dkt. No. 31at 19. (Germany Dep. Trans. at 26:11-24) (emphases added). Such testimony by Mr. Germany is probative to whether the Defendant was given actual or constructive knowledge of Plaintiff's harassment. Accordingly, the Court will permit Mr. Germany to testify about reporting incidents of harassment to management.

### d. Mr. Germany's Testimony is Not Unduly Prejudicial

Defendant's final argument against Mr. Germany's testimony is that, even if relevant, the testimony should be excluded pursuant to Rule 403 of the Federal Rules of Evidence because it is more prejudicial than it is probative. According to the Defendant, "Plaintiff cannot claim that **she** was subjected to a hostile work environment based on comments or conduct that she knew nothing about." Dkt. No. 40 at 9 (emphasis in original). Defendant argues that allowing the jury to hear about Mr. Germany's testimony "will lead a jury to believe that Plaintiff experienced or was impacted by these things – whether she knew about them or not," and argues that "a jury will have a very difficult time compartmentalizing what she actually knew about and experienced from what someone later told her about after she quit." *Id.*

The Court is not persuaded by this argument. The Sixth Circuit has emphasized that Rule 403 "states that relevant evidence may be excluded 'if its probative value is *substantially* outweighed by a danger of . . . unfair prejudice.' " *Kendel v. Local 17-A United Food & Commercial Workers*, 512 F. App'x 472, 483 (6th Cir. 2013) (quoting Fed. R. Evid. 403) (emphasis in original). According to the Sixth Circuit the Rule 403 determination "requires a judgment call by the district court, made with the assistance of the arguments provided by counsel." *Id.*

Looking at the arguments of the Defendant, the Court is not convinced that Mr. Germany's testimony is more prejudicial than it is probative. Defendant's argument is built on the presumption that Plaintiff did not have knowledge about the content of Mr. Germany's testimony. As discussed above; she did. Accordingly, the Court finds that this testimony would not be more prejudicial than probative.

### 2. The Testimony of Mr. Gjon Micakaj is Relevant and Not Unduly Prejudicial

Defendant also argues that Gjon Micakaj should be precluded from testifying regarding comments that Dean Falloni and Steve Smith allegedly made to Mr. Micakaj about Plaintiff in March or April 2009 at Defendant's Warren store. *See* Dkt. No. 40 at 2-3. Like Mr. Germany's testimony, Defendant argues that Mr. Micakaj's proposed testimony has no bearing on whether Defendant knew about the alleged harassment. *Id.* at 6. Similarly, Defendant also argues that even if the evidence is relevant it should be precluded because it is unduly prejudicial. *Id.* at 8. The Court will also address these arguments in turn.

### a. Plaintiff Was, In Fact, Aware of the Comments Made By Dean Falloni and Steve Smith

To preclude the comments made to Gjon Micakaj, Defendant argues that, "there is no indication from Plaintiff in her deposition that she was aware of any of the acts about which she

now seeks to introduce evidence." Dkt. No.40 at 7.  The Court disagrees.  Mr. Micakaj states that Plaintiff came to him "I think *in June* and said, you know, these guys are riding me pretty hard." Dkt. No. 31 at 30 (Micakaj Depo. Trans. 24:7-8) (emphasis added).  Plaintiff's last day working for the Defendant was in July of 2009.

Accordingly, Mr. Gjon Micakaj's testimony indicates that Plaintiff was aware, during the course of her employment, of relevant statements made during the course of her employment for which he will testify:

> Q. Okay. But she told you afterwards they're riding her pretty hard, is that right?
>
> A. Yeah.
>
> Q. What did she tell you other than that?
>
> *A. They were making comments about, you know, her hair, how long her hair was, what they can do with it, how they can see her thong, basically what positions they could put her in  . . . .*
>
> **Q.** Okay. So they made comments about how long her hair was, what they could do with it.  ***What did she tell you? I want you to tell me everything you remember her telling you.***
>
> *A. How they said that, you know, she could suck a mean dick, how they could see her thong, how they can wrap her long hair up in their fist and hit it doggy style.*
>
> Q. Anything else?
>
> A. Not that I can recall.
>
> Q. Okay. You did not hear those comments yourself, correct?
>
> A. Yeah, I heard it from them when they told me –
>
> Q. Okay.
>
> A. – at the store.
>
> Q. In March or April you heard something about her thong and you heard that she could suck a mean dick, is that right?

-13-

A. Yeah.

Dkt. No. 31 at 31 (Micakaj Depo. Trans. at 25-26:1-9) (emphases added). Given this testimony, the Court finds that it has sufficient facts to find that Plaintiff became aware of similar acts of harassment during the course of her employment. *See Hawkins*, 517 F.3d at 336.

### b. Mr. Micakaj's Testimony Has Bearing on Whether Defendant Had Notice of Alleged Harassing Conduct

With respect to using the testimony to establish that defendant had notice, Mr. Micakaj testified in his deposition that he did report complaints and problems about the work environment. Defendant seems to concede this point, as it states that "Plaintiff may call Mr. Micakaj as a witness to testify about what he allegedly said to Mr. Wisener, Mr. Kleber and Mr. Coggins." Dkt. No. 40 at 8. Accordingly, the Court will permit Mr. Micakaj to testify about reporting incidents of harassment to management.

### c. Mr. Micakaj's Testimony is Not Unduly Prejudicial

Defendant lastly argues that, even if relevant, Mr. Micakaj's testimony should be excluded pursuant to Rule 403 of the Federal Rules of Evidence because it is more prejudicial than it is probative. As with Mr. Germany's testimony, the Court is not persuaded by this argument. Again, Defendant's argument is built on the presumption that Plaintiff did not have knowledge about the content of Mr. Germany's testimony. As discussed above; Plaintiff was aware. Accordingly, the Court finds that this testimony would not be more prejudicial than probative.

### 3. The Court Does Not Have Enough Information to Rule on the Potential Testimony of Mr. Josh Summers

Plaintiff argues that testimony by Josh Summers "may be relevant to corroborate Plaintiff's testimony regarding the generally degrading attitude in which women were held at the

Uncle Ed's locations." Dkt. No. 38 at 17. Defendant argues that any testimony from Josh Summers would be irrelevant. Dkt. No. 40 at 6-7. Aside from a brief snippet of Mr. Summers' testimony, the Court has not been provided with any detail of what Mr. Summers would testify to, or a detailed explanation of what the Defendant seeks to preclude as irrelevant. Accordingly, the Court withholds its ruling on the testimony of Mr. Summers.

### 4. Evidence that Cassandra Bednarski Experienced Sexual Harassment is Irrelevant

Defendant also argues that Plaintiff may seek to offer evidence that Cassandra ("Cassie") Bednarski experienced sexual assault while employed with Defendant. Defendant specifically contends that Plaintiff should be precluded from testifying that Cassandra Bednarski—a former Store Manager for Uncle Ed's—told Plaintiff in September 2009 that Ms. Bednarski had been harassed by male co-workers, but did not complain about it because she did not want to lose her job.

The Court agrees. As an initial matter, if Plaintiff testifies to this matter it would be hearsay. However, the Court need not examine whether the proposed testimony is hearsay that falls within an exception because even if Ms. Bednarski were the one testifying to the statements the Court would deem the testimony irrelevant. The issue is irrelevant because Plaintiff did not become aware of this alleged similar occurrence of harassment while the Defendant employed her.

Plaintiff learned of the alleged harassment experienced by Ms. Bednarski in September of 2009; after Plaintiff was no longer working for Defendant. Looking at Plaintiff's testimony, Plaintiff testifies that she did not "know anything about [Ms. Bednarski] or [Ms. Bednarski] being harassed[.]" Dkt. No. 32 at 15 (Schmidlin Dep. Trans. at 32:10-11). Accordingly, the

Court finds that Plaintiff did not become aware of this alleged similar act of harassment during the course of her employment. *See Hawkins*, 517 F.3d at 336.

Additionally, Plaintiff cannot testify that Ms. Bednarski's statement is probative for establishing whether the Defendant was on actual or constructive notice of harassment. Plaintiff testified in her deposition that Ms. Bednarski stated she never told anyone about any harassment she endured, and that Ms. Bednarski stated that she never planned on telling anyone who worked for Defendant about it. *Id.* (Schmidlin Dep. Tans. at 32:11-14). Accordingly, this Court finds that Cassandra Bednarski's experiences are irrelevant, and will not help Plaintiff establish either the fourth or fifth elements of her prima facie case

### 5. If Ms. Jen Smith Were to Testify, Her Testimony that She Experienced Sexual Harassment Would Be Relevant

Defendant also briefly mentions that Plaintiff may seek to offer evidence that Jen Smith experienced sexual assault while employed with Defendant. Specifically, Defendant seeks to preclude Plaintiff from testifying that Jen Smith, another former co-worker at Uncle Ed's, allegedly told Plaintiff that she was subjected to sexual harassment while working for Defendant.

If Plaintiff testifies to this matter it would be hearsay. The Court will determine whether the testimony falls within an applicable hearsay exception below. Nevertheless, if Ms. Jen Smith were to testify to this fact, the Court finds that this Ms. Smith's testimony would be relevant. Unlike the situation with Ms. Bednarski, Plaintiff appears to have had knowledge of the sexual harassment experienced by Ms. Smith:

> I had asked her if she would come forward about things that had happened at the job[.] . . . So I did have a conversation with her and just told her now that you don't work there anymore maybe you should come forward and say things that have been going on[.]

Dkt. No. 32 at 17 (Schmidlin Dep. Trans. at 38:14-25). Given this testimony, if Ms. Smith decides to testify that she was subjected to sexual harassment, the Court would find that it has

sufficient facts to find that Plaintiff became aware these similar acts of harassment during the course of her employment. *See Hawkins*, 517 F.3d at 336.

However, Ms. Smith's testimony would not be probative to the establishing whether the Defendant was given actual or constructive notice of harassment. Plaintiff specifically testified in her deposition that Ms. Smith did not come forward to report any sexual harassment in the past, and that Ms. Smith wanted to stay out of it and not get dragged through anything. *See* Dkt. No. 32 at 17 (Schmidlin Dep. Trans. at 38:17-25). Because Ms. Smith never told anyone who worked for Defendant about her perceived harassment, the Court will not find that she put Defendant on actual or constructive notice of sexual harassment.

### B. Hearsay

Admissibility of hearsay evidence is set forth in Rule 801(c) which generally labels out of court statements made by a declarant that are offered to prove the truth of the matters asserted as hearsay. Fed. R. Evid. 801(c). Non-hearsay statements are set forth in Rule 801(d)(1) and 801(d)(2). Rule 801(d)(2) states that statements offered against an opposing party are not hearsay if the statements were made by the party in an individual or representative capacity, made by a person whom the party authorized to make a statement on the subject, or made by the party's agent or employee on a matter within the scope of that relationship while it existed. Fed. R. Evid. 801(d)(2). Many exceptions to the hearsay rule are set forth in Rules 803 and 804.

### 1. Plaintiff's Testimony About Jen Smith's Comments Constitutes Inadmissible Hearsay

Defendant seeks to preclude Plaintiff from testifying that Jen Smith, another former co-worker at Uncle Ed's, allegedly told Plaintiff that she was subjected to sexual harassment while working for Defendant. Defendant seeks to preclude this testimony pursuant to Rule 801(d)(2) to

the extent that Plaintiff seeks to introduce this testimony to prove that Ms. Bednarski believes she was subject to a hostile work environment.

Notably, the Plaintiff does not respond to Defendant's arguments. Plaintiff testified that the statements made by Ms. Smith were made after Ms. Smith was no longer an employee for the Defendant. There is no indication that Ms. Smith was speaking within the scope of her duties as a manager. Furthermore, in failing to address Defendant's argument, Plaintiff advances no other hearsay exceptions. Accordingly, this statement will be deemed inadmissible hearsay.

Defendant also seeks to preclude Plaintiff from testifying that Jen Smith allegedly told Plaintiff that Uncle Ed's would never terminate Dean Falloni because he was too good at working on cars. Again, Defendant seeks to preclude this testimony pursuant to Rule 801(d)(2) to the extent that Plaintiff seeks to introduce this testimony to prove that Ms. Smith's assertion was the actual stance Defendant held with respect to Mr. Falloni. Again, there is no indication that Ms. Smith was speaking within the scope of her duties as a manager. Plaintiff advances no other hearsay exceptions. Accordingly, this statement will also be deemed inadmissible.

### 2. Plaintiff's Testimony About Whether Morrease Germany, in Fact, Informed Cassandra Bednarski About Harassment Constitutes Inadmissible Hearsay

Lastly, Defendant argues that Plaintiff should be precluded from testifying that Morrease Germany told Plaintiff that Steve Smith was making sexual comments about Plaintiff behind her back, and that Mr. Germany said to Plaintiff that he reported those comments to Ms. Bednarski. The Court finds that Plaintiff will be able to testify about the comments Mr. Germany made to her, but she will not be able to testify that Mr. Germany did, in fact, tell Ms. Bednarski about the alleged harassment because Plaintiff specifically testified that she did not have personal knowledge of that fact. *See* Dkt. No. 32 at 18 (Schmidlin Dep. Trans. At 136:6-7 ("Q. Do you know if [Mr. Germany] did talk to Cassie about it? A. I don't know. I didn't ask.")).

## IV. CONCLUSION

For the reasons discussed herein, the Court will **DENY** in part and **GRANT** in Part Defendants *In Limine* Motions to Exclude Irrelevant Evidence [#31] and Hearsay Statements [#32].

SO ORDERED.

Dated: November 10, 2014

/s/Gershwin A Drain
Hon. Gershwin A. Drain
United States District Court Judge